**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **QUEEN VIRGIN REMY LTD. CO.,** | ) | |
| **QUEEN VIRGIN REMY COLUMBUS,** | ) | |
| **LLC, and DENNIS MCKINLEY,** | ) | |
| **Individually,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **v.** | ) | |
| | ) | |
| **SHANISE W. THOMASON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, Plaintiffs Queen Virgin Remy Ltd. Co. ("QVR"), Queen Virgin Remy Columbus, LLC ("QVR Columbus"), and Dennis McKinley ("McKinley") (collectively, "Plaintiffs"), by and through their attorneys, and bring this action against Defendant Shanise W. Thomason ("Defendant" or "Thomason") seeking recovery of damages and injunctive relief for trademark infringement, conversion and other wrongful acts committed by Defendant Thomason, showing this Honorable Court as follows:

## INTRODUCTION

Queen Virgin Remy is a hair weave and extensions business founded by Plaintiff McKinley in 2011. Plaintiff McKinley has continuously used the name Queen Virgin Remy and a distinct Queen Virgin Remy brand logo for his business since 2011 and is the sole registered owner of United States trademarks for the phrase "Queen Virgin Remy" as well as the Queen Virgin Remy brand logo. Defendant Thomason has no ownership rights or interests in Queen Virgin Remy or any of its affiliated entities, nor has she ever maintained or held any such rights or interests. This action arises out of Defendant Thomason's brazen misconduct in unlawfully and illegally taking approximately $6,000.00 worth of Queen Virgin Remy inventory from a Queen Virgin Remy retail store in Columbus, Georgia, as well as Defendant Thomason's infringement of Queen Virgin Remy intellectual property. Defendant Thomason has used and continues to use the Queen Virgin Remy trade name and brand logo to promote and market herself and her own business ventures in a way that is misleading and confusing to members of the public, including, but not limited to, repeated misrepresentations as to her affiliation with Queen Virgin Remy and false claims of ownership of Queen Virgin Remy and one or more of its exclusive brands. As a result of Defendant Thomason's misconduct, as further detailed below, Plaintiffs seek damages and injunctive relief

2

for the harm they have suffered and will continue to suffer if such behavior continues, including irreparable injuries to Plaintiffs' business and goodwill.

## PARTIES, JURISDICTION AND VENUE

1.

Plaintiff Queen Virgin Remy Ltd. Co. is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in the State of Georgia.

2.

Plaintiff Queen Virgin Remy Columbus, LLC is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in the State of Georgia.

3.

Plaintiff Dennis McKinley is the sole founder, principal, and manager of Queen Virgin Remy Ltd. Co. and Queen Virgin Remy Columbus, LLC. He is also the owner of the registered trademarks for the phrase "Queen Virgin Remy" and the Queen Virgin Remy brand logo.

4.

Defendant Thomason is a resident of the State of Georgia. Defendant Thomason may be served with service of process at her last known address at 5714

Cameo Street, Columbus, Georgia 31907. Upon information and belief, Defendant Thomason is represented by the following counsel: Keith A. Pittman, Lamar, Archer & Cofrin, LLP, The Hurt Building, 60 Hurt Plaza, Suite 900, Atlanta, Georgia 30303.

5.

This Court has federal question jurisdiction over the federal claims in this action under the Trademark Laws of the United States, Lanham Act Sections 32, 39, and 43(a), 15 U.S.C. §§ 1114, 1121, and 1125(a), and the Judicial Code of the United States, 28 U.S.C. § 1331, §§ 1338(a) and (b). This Court has supplemental jurisdiction over any common law and state statutory claims under 28 U.S.C. § 1367.

6.

This Court has personal jurisdiction over Defendant Thomason and venue in this action is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**FACTUAL BACKGROUND**

7.

Plaintiff McKinley is the sole founder, principal and manager of Queen Virgin Remy, a hair weave and extensions business he started in August 2011.

8.

Since August 2011, Plaintiff McKinley has continuously used the trade name and brand "Queen Virgin Remy" in connection with his hair weave and extensions business, including the operation of an online business through the domain name www.queenvirginremy.com.  Throughout this time period, he has also used a distinct Queen Virgin Remy brand logo to represent the Queen Virgin Remy brand and business.

9.

Since its inception in 2011, the Queen Virgin Remy brand and business has continuously expanded its online regional and national sales and exposure.  The Queen Virgin Remy brand and business now also encompasses eleven Queen Virgin Remy retail store locations across North America, including the flagship store in the metro Atlanta area, as well as retail stores in Birmingham, Alabama; Brooklyn, New York; Charlotte, North Carolina; Columbus, Georgia; Washington, D.C.; Las Vegas, Nevada; Montgomery, Alabama; New Orleans, Louisiana; Savannah, Georgia; and Southfield, Michigan.

10.

Queen Virgin Remy has become the largest retailer of imported hair extensions in the United States and the fastest growing distributor of 100% virgin and remy human hair.

11.

The trademarks for the phrase "Queen Virgin Remy" and the Queen Virgin Remy brand logo are federally registered trademarks with the United States Patent and Trademark Office under Plaintiff McKinley's name, individually. (Copies of each of the registered trademarks are attached hereto as Exhibit A.)

12.

Queen Virgin Remy offers premium hair products to individual buyers, salon chains, cosmetic/beauty distributors, and retailers of all sizes.

13.

Queen Virgin Remy buys human hair directly overseas from India, Malaysia, Vietnam, Russia, Cambodia, Mongolia, Hong Kong, China and Canada. Queen Virgin Remy also has exclusive distribution agreements for certain product brands, such as the Toya Wright Hair Collection. Queen Virgin Remy guarantees the true origin of its human hair products to its buyers.

14.

Queen Virgin Remy also insures the premium quality of its virgin hair through a 5-tier quality inspection process:   Queen Virgin Remy's virgin hair is never permed, never dyed, never colored, never bleached, and never chemically processed in any way.  This also means Queen Virgin Remy's virgin hair comes from a single person.  Queen Virgin Remy's remy hair has all cuticles intact and running in the same direction for a natural and more long-lasting look than non-remy hair.  Queen Virgin Remy's virgin remy hair provides the best of both worlds in virgin and remy hair by offering unprocessed human hair with the cuticle intact and all strands facing in the same direction.

15.

Defendant Thomason and Plaintiff McKinley were previously involved in a personal relationship.  Defendant Thomason is not employed by Queen Virgin Remy, nor has she ever worked for Queen Virgin Remy.  Defendant Thomason is not otherwise affiliated or associated with Queen Virgin Remy or any of its related entities.

16.

At no point in time has Defendant Thomason had any ownership interest in Queen Virgin Remy or any of its related entities.   To Plaintiffs' knowledge,

7

Defendant Thomason also has no ownership interests or rights in any of the product brands sold through Queen Virgin Remy's website or retail stores, including the Toya Wright Hair Collection.

**Defendant Thomason's Conversion of Queen Virgin Remy Hair Products**

17.

The Queen Virgin Remy retail store in Columbus, Georgia is located at 3640 Buena Vista Road, Columbus, Georgia 31906.

18.

On the afternoon of February 19, 2015, Defendant Thomason entered the Queen Virgin Remy retail store in Columbus and unlawfully took Queen Virgin Remy hair products from the store without paying. Defendant Thomason took these hair products without authorization or permission from Queen Virgin Remy or anyone acting on Queen Virgin Remy's behalf.

19.

More specifically, at approximately 5:55 p.m., Defendant Thomason entered into the Columbus store with a large, black trash bag. She walked behind the front counter of the store and opened the door to the store's stock room. She removed hair products inventory from storage bins and placed them into the black trash bag

and left the store with the black trash bag filled with Queen Virgin Remy hair products without paying.

20.

Defendant Thomason took approximately sixty-seven percent (67%) of the Columbus store's inventory.   The property taken by Defendant Thomason was valued at $5,900.00.

21.

Queen Virgin Remy reported Defendant Thomason's theft to the Columbus Police Department resulting in an incident report dated February 19, 2015 and Complaint No. 15004604.   (Copies of the February 19, 2015 incident report and supplement incident report are attached hereto as Exhibit B.)

22.

Defendant Thomason was charged by the Columbus Police Department with Theft by Shoplifting, and a warrant was issued for her arrest.

23.

As reflected in the February 19, 2015 supplement incident report referenced in Paragraph 21, Defendant Thomason initially evaded arrest by misrepresenting to one or more officers of the Columbus Police Department that she "shared ownership" of Queen Virgin Remy with Plaintiff McKinley, that the Columbus store

manager was "her employee and would be fired for calling police on her," and that she had entered the Columbus store "to collect her weaves." Upon information and belief, the police officer(s) initially let Defendant Thomason go without arresting her based on such misrepresentations.

24.

Defendant Thomason subsequently turned herself in to the Columbus Police Department on the outstanding warrant and was arrested for Theft by Shoplifting on or about February 25, 2015.

25.

Defendant Thomason was released on bond and continues to pose a threat to the business operations, goodwill, and property of Queen Virgin Remy and its retail stores, particularly stores in Columbus and Atlanta where Defendant Thomason and/or family members have residences.

26.

To date, Queen Virgin Remy has not recovered the property Defendant Thomason took from the Columbus retail store on February 19, 2015, or any restitution for the value of the stolen property. The Columbus retail store not only experienced a loss of property valued at $5,900.00, but also suffered a disruption in business operations by virtue of having to replace approximately sixty-seven percent

(67%) of its Columbus store's inventory as a result of Defendant Thomason's conversion and failure to return the property and inability to satisfy customer orders.

**Defendant Thomason Continues to Misrepresent Herself to the Public as an Owner of Queen Virgin Remy and Misappropriate Plaintiffs' Trade Name and Brand Logo.**

27.

Since her arrest for Theft by Shoplifting, Defendant Thomason has continued to represent herself to members of the public as an owner of Queen Virgin Remy.

28.

Defendant Thomason has also represented herself to members of the public as a founder of Queen Virgin Remy.

29.

Defendant Thomason uses the pseudonyms "Aoki," "Aoki Nikol," and "@hairbyaoki" to market and promote herself professionally to members of the public and social media followers, including existing and/or potential hair weave and extensions customers, salons, and stylists.

30.

On or about March 6, 2015, Defendant Thomason promoted herself on Instagram under the pseudonym "@hairbyaoki" to over eleven thousand four hundred (11,400) followers as an "Owner" of "Queen Virgin Remy" and "Toya

Wright Hair Collection," one of the product brands for which Queen Virgin Remy has an exclusive distribution agreement.  (A copy of the Instagram screenshot is attached hereto as Exhibit C.)

31.

The @hairbyaoki Instagram profile visible to the public also had a link to an invitation published on eventbrite.com for a networking event scheduled for April 19, 2015 in Atlanta, Georgia ("Beyond the Chair:Atl") which listed Defendant Thomason as the event "organizer" and "co-host."

32.

The April 19, 2015 event invitation targeted beauty industry professionals but was open to the public and charged a $35.00 registration fee.  In her description of the event details on the public invitation as the organizer, Defendant Thomason represented, marketed, and promoted her pseudonym "Aoki" as "Co-Owner of Queen Virgin Remy & Creator/Co-Owner of the Toya Wright Hair Collection."

33.

The published flyer advertising the April 19, 2015 event also included a photograph of Defendant Thomason above the pseudonym "@hairbyaoki" and again identified her as "Co-Owner of Queen Virgin Remy & Creator Co-Owner of the Toya Wright Hair Collection."  (Copies of the Eventbrite.com event invitation and

published flyer and related posts from the @hairbyaoki Instagram page are attached hereto as Exhibit D.) Willa Kennedy a/k/a "@ms_willaworld" was the other co-host and promoter of the April 19, 2015 event and related advertisements and promotional materials.

34.

At least until April 21, 2015, Defendant Thomason continued to represent herself through her @hairbyaoki Instagram profile visible to the public (not just her followers) as an "Owner" of "Queen Virgin Remy" and "Toya Wright Hair Collection." (Copies of Instagram profile screenshots from various time periods, including March 19, 2015, March 26, 2015, March 31, 2015, April 7, 2015, and April 21, 2015 are attached hereto as Exhibit E.)

35.

As May 8, 2015, the date of filing this Complaint, Defendant Thomason's @hairbyaoki Instagram profile visible to the public continues to represent her as having an affiliation with "Queen Virgin Remy" and "Toya Wright Hair Collection." (A copy of the May 8, 2015 Instagram screenshot is attached hereto as Exhibit F.)

36.

Defendant Thomason also used or authorized the use of the Queen Virgin Remy brand logo on promotional flyers that identified Queen Virgin Remy as a

"sponsor" for an industry event in which Defendant Thomason was a featured participant on February 21, 2015 in connection with Bronner Brothers Weekend, one of the biggest beauty show events in the hair weave and extensions business. Defendant Thomason published the promotional flyers and promoted the February 21, 2015 event on the Instagram page for her pseudonym @hairbyaoki. (Copies of the promotional flyer and screenshots of related posts from the @hairbyaoki Instagram page are attached hereto as Exhibit G.) She also organized and published an event on Eventbrite.com for the February 21, 2015 event which included a copy of the promotional flyer. (Copies of screenshots from Defendant Thomason's Eventbrite.com event are attached hereto as Exhibit H.)

37.

Defendant Thomason's use or authorization of the use of the Queen Virgin Remy brand logo in connection with the February 21, 2015 event was without permission or authorization.

38.

Likewise, Defendant Thomason's attempt to professionally associate her pseudonyms "Aoki" or "@hairbyaoki" with Queen Virgin Remy in connection with the February 21, 2015 event was without permission or authorization.

14

39.

Defendant Thomason also participated in an interview with an internet blogger of which at least a portion was published online (www.imperezbitch.com) on or about March 2, 2015 under the heading "Hair Spotlight:  Queen Virgin Remy" which includes a photograph of Defendant Thomason and a portion of her interview in which she claims to be a co-founder and co-owner of Queen Virgin Remy.  (A copy of the published article is attached hereto as Exhibit I.)

40.

Around the time her interview was published, Defendant Thomason posted under her pseudonym @hairbyaoki Instagram page statements similar to her interview statements in which she again claimed to be a co-founder and co-owner of Queen Virgin Remy and the creator of the Toya Wright Hair Collection, one of Queen Virgin Remy's exclusive brands.   (A copy of screenshots from the @hairbyaoki Instagram post are attached hereto as Exhibit J.)

41.

At all relevant times, Defendant Thomason has been aware of the goodwill represented by the Queen Virgin Remy trade name and brand logo and the fact customers and members of the hair weave and extensions industry recognize the Queen Virgin Remy trade name and brand logo as identifying Queen Virgin Remy

goods and services as distinguished from those of others and symbolizing products of a certain quality and reputation.

42.

Despite having no legal interest in or rights to the trademarks for the phrase "Queen Virgin Remy" and the Queen Virgin Remy brand logo, and all related goodwill, Defendant Thomason has intentionally and willfully used these trademarks and continues to misrepresent herself as a co-owner of Queen Virgin Remy.

43.

Defendant Thomason's use of the trademarks for the phrase "Queen Virgin Remy" and the Queen Virgin Remy brand logo was intentional and deliberate and designed to take unfair advantage of the goodwill and reputation of Plaintiffs' business.

44.

As a result of Defendant Thomason's use of these trademarks to market and promote herself (including her pseudonyms) professionally, existing and potential customers and industry members are likely to confuse, and will continue to confuse, Defendant Thomason's represented connection with, or affiliation with, Queen

Virgin Remy as well as confuse any products and services offered or promoted by Defendant Thomason with Queen Virgin Remy products and services.

### 45.

Defendant Thomason's infringement of Plaintiffs' rights is willful and deliberate with full knowledge of Plaintiffs' rights in the trademark.

**Irreparable Harm**

### 46.

Defendant Thomason's misconduct has injured Plaintiffs in an amount that is difficult to quantify and, if continued unabated, will irreparably harm Plaintiffs. Plaintiffs have no adequate remedy at law that will make them whole from the calculated and purposeful damage Defendant Thomason has inflicted and continues to inflict on Plaintiffs' trade name and brand logo, business operations, goodwill, customer relationships, and property.

### 47.

Defendant Thomason's misconduct described above has caused immediate, substantial and irreparable injury to the business and goodwill of Plaintiffs.

### 48.

Defendant Thomason's misconduct is ongoing and continuing, making the amount of damages to Plaintiffs difficult to quantify.  Plaintiffs continue to learn

additional details of misconduct by Defendant Thomason, particularly her continued unauthorized use of the Queen Virgin Remy trade name and brand logo and misrepresentations to members of the public that she is an owner of Queen Virgin Remy.

## COUNT ONE - CONVERSION
### (QVR Columbus Against Defendant Thomason)

49.

Plaintiffs hereby incorporate by reference and reallege in Count One, as if fully stated herein, each and every allegation of Paragraphs 1 through 48 of this Complaint.

50.

At all times material to this action, the property taken by Defendant Thomason belonged to QVR Columbus and was in QVR Columbus's lawful possession.

51.

On or about February 19, 2015, Defendant Thomason unlawfully took possession of property owned by QVR Columbus valued at $5,900.00. Defendant Thomason took this property without paying for it and otherwise without authorization or permission from QVR Columbus.

52.

Defendant Thomason's wrongful and unlawful taking of QVR Columbus's property was in denial of and inconsistent with QVR Columbus's lawful right to possession of its property, and constituted a conversion of QVR Columbus' property.

53.

As a direct result of Defendant Thomason's conversion of the property, QVR Columbus has been damaged in an amount not less than $5,900.00. By taking QVR Columbus's property with full knowledge she had no legal right to do so, Defendant Thomason willfully and intentionally committed the tort of conversion for which QVR Columbus is also entitled to recover punitive damages.

## COUNT TWO - TRADMARK INFRINGEMENT – SECTION 32 OF THE LANHAM ACT
**(Plaintiff McKinley Against Defendant Thomason)**

54.

Plaintiffs hereby incorporate by reference and reallege in Count Two, as if fully stated herein, each and every allegation of Paragraphs 1 through 53 of the Complaint.

55.

Plaintiff McKinley owns the trademark for the phrase "Queen Virgin Remy," which is registered with the United States Patent and Trademark Office under Plaintiff McKinley's individual name. As the registered owner, Plaintiff McKinley has the exclusive right to use these registered marks in commerce.

56.

Plaintiff McKinley also owns the trademark for the Queen Virgin Remy brand logo. The Queen Virgin Remy brand logo consists of a unique and distinct design including the words "Virgin Remy Exotic Virgin & Remy Hair Extensions." More specifically, the Queen Virgin Remy brand logo consists of the words "Virgin Remy" on the first line in the Kings and Queens style font, with a right side silhouette profile of a queen's head wearing a crown between the words "Virgin" and "Remy." On the second line are the words "EXOTIC VIRGIN & REMY HAIR EXTENSIONS" capitalized in an Arial style font centered right below the first line. This trademark is registered with the United States Patent and Trademark Office under Plaintiff McKinley's individual name.

57.

Defendant Thomason has no legal right, title or interest in or to the "Queen Virgin Remy" trademark or its related goodwill or to represent that she is affiliated

with Queen Virgin Remy in any way.  Nor does she have any legal right, title or interest in or to the Queen Virgin Remy brand logo trademark or its related goodwill or to represent that she is affiliated with the Queen Virgin Remy brand logo trademark in any way.

58.

Defendant Thomason has used the "Queen Virgin Remy" trademark and Queen Virgin Remy brand logo trademark without consent, license or authorization by Plaintiff McKinley, including use of these trademarks in connection with the marketing and sale of goods, services, and/or products in a manner likely to cause confusion or deceive as to the sources of the goods or services.

59.

Defendant Thomason's improper and unauthorized use of Plaintiff McKinley's trademarks is wrongful.  Defendant Thomason has committed and, unless enjoined by the Court, will continue to commit the alleged infringing acts with full knowledge of and willful and intentional disregard of Plaintiff McKinley's rights in and to the trademarks.

60.

As a proximate result of Defendant Thomason's wrongful acts, Plaintiff McKinley has suffered, and continues to suffer, damages.  Defendant Thomason's

21

aforementioned conduct is in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Plaintiff McKinley is entitled to monetary damages in an amount to be determined by the trier of fact.

61.

Any continued use by Defendant Thomason of the "Queen Virgin Remy" trademark or the Queen Virgin Remy brand logo trademark will cause irreparable injury and harm to Plaintiff McKinley for which there is no adequate remedy at law and for which Plaintiff McKinley is entitled to injunctive relief.

62.

Due to the intentional use of the trademark by Defendant Thomason, this is an exceptional case as defined in Section 35 of the Lanham Act, 15 U.S.C. § 1117, for which Plaintiff McKinley is also entitled to an award of treble damages and reasonable attorneys' fees as well as Defendant Thomason's profits.

63.

Plaintiff McKinley also requests this Court grant a temporary restraining order as well as an interlocutory and permanent injunction against Defendant Thomason in order to prevent any continuation of the wrongful conduct described above.

## COUNT THREE - COMMON LAW TRADEMARK INFRINGEMENT
### (Plaintiff McKinley Against Defendant Thomason)

64.

Plaintiffs hereby incorporate by reference and reallege in Count Three, as if fully stated herein, each and every allegation of Paragraphs 1 through 63 of the Complaint.

65.

Plaintiff McKinley has continuously and extensively used the "Queen Virgin Remy" trademark and Queen Virgin Remy brand logo trademark for his Queen Virgin Remy brand and business since August 2011.  Throughout this time period, he has used these trademarks to represent his Queen Virgin Remy brand and business online through his website business at www.queenvirginremy.com and through Queen Virgin Remy's physical presence in cities in which Queen Virgin Remy has retail stores.

66.

The phrase "Queen Virgin Remy" and Queen Virgin Remy brand logo are unique and distinct trade names and brand logos.  Moreover, Plaintiff McKinley's extensive and continuous use of this phrase and logo has caused "Queen Virgin Remy" and the Queen Virgin Remy brand logo design to each have a secondary, distinctive and unique trademark meaning to customers, salons, hair stylists, and

other hair industry members related to the goods and services marketed and sold by Plaintiffs.

67.

Plaintiff McKinley began to use the phrase "Queen Virgin Remy" and the Queen Virgin Remy brand logo in connection with his Queen Virgin Remy business before Defendant Thomason started to use it for her own self-marketing and promotion. Defendant Thomason is aware of Plaintiff McKinley's prior use in connection with the Queen Virgin Remy brand and business. Moreover, Plaintiff McKinley has been the registered owner of the federal trademark for Queen Virgin Remy brand logo since June 3, 2014 and the registered owner of the federal trademark for the phrase Queen Virgin Remy since August 19, 2014.

68.

At no point in time has Defendant Thomason had any legal rights, title or interest in or to the "Queen Virgin Remy" trade name or the Queen Virgin Remy brand logo.

69.

Defendant Thomason has used and/or authorized the use of the "Queen Virgin Remy" trade name and Queen Virgin Remy brand logo in an attempt to trade upon

the goodwill and reputation of the Queen Virgin Remy brand and business started by Plaintiff McKinley.

70.

Defendant Thomason's use of the Queen Virgin Remy trade name and Queen Virgin Remy brand logo is likely to cause confusion and deception to the public.

71.

Defendant Thomason's actions constitute infringement of Plaintiff McKinley's common law trademark rights.

72.

As a proximate result of Defendant Thomason's use of the trademarks, Plaintiff McKinley has suffered, is suffering, and will continue to suffer harm, injury and damages for which Plaintiff McKinley is entitled to relief under common law.

73.

Any continued use by Defendant Thomason of the trademarks would cause irreparable injury and harm to Plaintiff McKinley for which there is no adequate remedy at law and for which Plaintiff McKinley is entitled to injunctive relief.

74.

Plaintiff McKinley also requests this Court grant a temporary restraining order as well as an interlocutory and permanent injunction against Defendant Thomason in order to prevent the continued wrongful conduct described above.

## COUNT FOUR – VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
**(QVR and Plaintiff McKinley Against Defendant Thomason)**

75.

Plaintiffs hereby incorporate by reference and reallege in Count Four, as if fully stated herein, each and every allegation of Paragraphs 1 through 74 of this Complaint.

76.

Plaintiffs QVR and McKinley are persons pursuant to the Georgia Uniform Deceptive Trade Practices Act (the "DTPA").  O.C.G.A. § 10-1-371(5).

77.

Defendant Thomason is a person pursuant to the DTPA.

78.

The DTPA entitles a person to injunctive relief and protection of a trade name or logo when another person's use of the same or similar trade name or logo causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval,

or certification of goods or services, or as to affiliation, connection, or association with or certification by another person, or as to any other conduct which creates a likelihood of confusion or misunderstanding.

79.

The phrase "Queen Virgin Remy" is a protected trade name used by the Queen Virgin Remy brand and business to identify and distinguish Queen Virgin Remy goods and services from those of others. The Queen Virgin Remy brand logo is a protected trademark used by the Queen Virgin Remy brand and business to identify and distinguish Queen Virgin Remy goods and services from those of others. Moreover, Plaintiff McKinley has federally registered trademarks for the phrase "Queen Virgin Remy" and the related brand logo.

80.

The phrase "Queen Virgin Remy" and the Queen Virgin Remy design logo are original and inherently distinctive. As a result, Plaintiff McKinley had the prior exclusive right to use this phrase and design logo as a protected trade name and brand logo.

81.

Plaintiffs McKinley and QVR were also first to achieve additional secondary meaning in the phrase Queen Virgin Remy and the Queen Virgin Remy brand logo.

Plaintiff McKinley's use of the Queen Virgin Remy phrase and brand logo since 2011 in connection with his hair weave and extensions business has caused that phrase and logo to become associated with Queen Virgin Remy's goods and services. "Queen Virgin Remy" and the Queen Virgin Remy design logo are now understood by the public to designate Queen Virgin Remy goods and services. In particular, Plaintiffs McKinley and QVR have achieved secondary meaning in the phrase Queen Virgin Remy and the Queen Virgin Remy brand logo online and throughout Georgia and in other states in which Queen Virgin Remy has retail stores.

82.

Defendant Thomason has subsequently used the trade name Queen Virgin Remy and the Queen Virgin Remy brand logo for marketing and self-promotion without license, authorization or permission by Plaintiffs McKinley or QVR despite having knowledge of their prior and existing use of this trade name and brand logo. In connection with her use of the trade name Queen Virgin Remy and brand logo, Defendant Thomason has represented herself to members of the public as an owner of Queen Virgin Remy and one or more of its exclusive brands knowing such actions to be deceptive and confusing to the public.

83.

Defendant Thomason's subsequent use of the phrase Queen Virgin Remy as well as the Queen Virgin Remy brand logo infringes on the Queen Virgin Remy trade name and brand logo and causes confusion and misunderstanding by consumers of hair weave products and extensions and among members of the industry.

84.

Plaintiffs McKinley and QVR are likely to be damaged by Defendant Thomason's deceptive trade practices and therefore entitled to injunctive relief pursuant to O.C.G.A. § 10-1-373(a). Moreover, Plaintiffs McKinley and QVR are entitled to recover costs and attorneys' fees due to Defendant Thomason's willful and intentional use of the trade name Queen Virgin Remy and brand logo without authorization or permission in connection while knowing such acts to be deceptive and confusing to the public.

## COUNT FIVE – UNFAIR COMPETITION UNDER SECTION 43(A) OF LANHAM ACT
### (QVR and Plaintiff McKinley Against Defendant Thomason)

85.

Plaintiffs hereby incorporate by reference and reallege in Count Five, as if fully stated herein, each and every allegation of Paragraphs 1 through 84 of this Complaint.

86.

Section 43(a) entitles a person to protection of a trade name or logo when another person's use of the same or similar trade name or logo causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or as to affiliation, connection, or association with or certification by another person, or as to any other conduct which creates a likelihood of confusion or misunderstanding.

87.

The phrase "Queen Virgin Remy" is a protected trade name used by the Queen Virgin Remy brand and business to identify and distinguish Queen Virgin Remy goods and services from those of others.  The Queen Virgin Remy brand logo is a protected trademark used by the Queen Virgin Remy brand and business to identify and distinguish Queen Virgin Remy goods and services from those of others.

Moreover, Plaintiff McKinley has federally registered trademarks for the phrase "Queen Virgin Remy" and the related brand logo.

88.

The phrase "Queen Virgin Remy" and the Queen Virgin Remy design logo are original and inherently distinctive.  As a result, Plaintiff McKinley had the prior exclusive right to use this phrase and design logo as a protected trade name and brand logo.

89.

Plaintiffs McKinley and QVR were also first to achieve additional secondary meaning in the phrase Queen Virgin Remy and the Queen Virgin Remy brand logo. Plaintiff McKinley's use of the Queen Virgin Remy phrase and brand logo since 2011 in connection with his hair weave and extensions business has caused that phrase and logo to become associated with Queen Virgin Remy's goods and services.  "Queen Virgin Remy" and the Queen Virgin Remy design logo are now understood by the public to designate Queen Virgin Remy goods and services.  In particular, Plaintiffs McKinley and QVR have achieved secondary meaning in the phrase Queen Virgin Remy and the Queen Virgin Remy brand logo online and throughout Georgia and in other states in which Queen Virgin Remy has retail stores.

90.

Defendant Thomason has subsequently used the trade name Queen Virgin Remy and the Queen Virgin Remy brand logo for marketing and self-promotion without license, authorization or permission by Plaintiffs McKinley or QVR despite having knowledge of their prior and existing use of this trade name and brand logo. In connection with her use of the trade name Queen Virgin Remy and brand logo, Defendant Thomason has represented herself to members of the public as an owner of Queen Virgin Remy and one or more of its exclusive brands knowing such actions to be deceptive and confusing to the public.

91.

Defendant Thomason's subsequent use of the phrase Queen Virgin Remy as well as the Queen Virgin Remy brand logo infringes on the Queen Virgin Remy trade name and brand logo and causes confusion and misunderstanding by consumers of hair weave products and extensions and among members of the industry.

92.

Plaintiffs McKinley and QVR are likely to be damaged by Defendant Thomason's deceptive trade practices and therefore entitled to injunctive relief as well as recovery of damages in an amount to be proven at trial. Moreover, Plaintiffs

McKinley and QVR are entitled to recover treble damages and attorneys' fees, as well as Defendant Thomason's profits, due to Defendant Thomason's willful and intentional use of the trade name Queen Virgin Remy and brand logo without authorization or permission in connection while knowing such acts to be deceptive and confusing to the public.

### COUNT FIVE – PUNITIVE DAMAGES
### (Plaintiffs Against Defendant Thomason)

93.

Plaintiffs hereby incorporate by reference and reallege in Count Five, as if fully stated herein, each and every allegation of Paragraphs 1 through 92 of this Complaint.

94.

Defendant Thomason's conduct as described above evidences willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

95.

Plaintiffs are entitled to recover an award of punitive damages to punish, penalize, or deter Defendant Thomason in an amount determined by the enlightened conscience of the trier of fact, particularly given Defendant Thomason's blatant pattern of intentional and deceitful misconduct.

## COUNT SIX – ATTORNEYS' FEES

### 96.

Plaintiffs hereby incorporate by reference and reallege in Count Six, as if fully stated herein, each and every allegation of Paragraphs 1 through 95 of this Complaint.

### 97.

Defendant Thomason has acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary and undue trouble and expense for which Plaintiffs are entitled to recover their costs and expenses, including reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11, as well as any other statutory or common law basis.

## DEMAND FOR JURY TRIAL

### 98.

Plaintiffs respectfully demand a trial by jury as to all claims triable by jury.

**WHEREFORE**, Plaintiffs pray:

A.   That all claims triable by jury be tried by a jury;

B.   The temporary, preliminary and permanent injunctive relief requested herein;

C.   That judgment be entered in favor of Plaintiff QVR Columbus for its conversion claim in Count One in an amount not less than $5,900.00;

D.  That judgment be entered in favor of Plaintiff McKinley for his federal trademark infringement claim in Count Two in an amount to be proven at trial, including treble damages and attorneys' fees and profits;

E.  That judgment be entered in favor of Plaintiff McKinley for his Georgia common law trademark infringement claim in Count Three;

F.  That judgment be entered in favor of Plaintiffs McKinley and QVR for violation of the Georgia Uniform Deceptive Trade Practices Act in Count Four in an amount to be proven at trial;

G.  That judgment be entered in favor of Plaintiffs McKinley and QVR for violation of Section 43(a) of the Lanham in Count Five in an amount to be proven at trial, including treble damages and attorneys' fees and profits;

H.  For punitive damages against Defendant Thomason in an amount to be determined by the enlightened conscience of an impartial fact finder;

I.  For attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 and statutory law;

J.  That the Court award Plaintiffs post-judgment interest as allowed by law;

K.  For all costs associated with bringing this action; and

L.      That the Court award Plaintiffs such further and other relief as this

        Court deems just and proper.

This 8th day of May, 2015.

                                        **PATEL BURKHALTER LAW GROUP**

                                        /s/ Brian W. Burkhalter
                                        Brian W. Burkhalter
                                        Georgia Bar No. 095809
                                        bburkhalter@patelburkhalter.com
                                        C. Melissa Ewing
                                        Georgia Bar No. 253383
                                        mewing@patelburkhalter.com
                                        4045 Orchard Road
                                        Building 400
                                        Atlanta, Georgia  30080
                                        (678) 466-7885

                                        *Attorneys for Plaintiffs Queen Virgin Remy*
                                        *Ltd. Co., Queen Virgin Remy Columbus,*
                                        *LLC, and Dennis McKinley*

## VERIFICATION

I, Dennis McKinley, hereby certify that I have read the foregoing **VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** and that the information set forth therein is true and correct to the best of my knowledge, information and belief.

This 7th day of ___May___, 2015.

_____

Dennis McKinley
Founder, Principal and Manager, Queen Virgin Remy

Sworn and subscribed before me this 7th day of ___May___, 2015

_____
Notary Public
My Commission Expires:

ALICIA WOOD
NOTARY
Comm. Exp.
11/19/15
PUBLIC
PAULDING COUNTY, GA

28