**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| QUEEN VIRGIN REMY LTD. CO., et al., | ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO.: 1:15-cv-1638-SCJ |
| SHANISE W. THOMASON, | ) ) | **PRETRIAL CONFERENCE REQUESTED** |
|     Defendant. | ) ) | |

## PRETRIAL ORDER

The parties hereby submit their joint pretrial order as follows:

1.

There are no motions or other matters pending for consideration by the court except as noted:

1. Plaintiffs' Motion to Provide Documents In Camera [ECF 182];

2. Plaintiffs' Motion for Sanctions [183] and Memorandum of Law in Support [184 (provisionally sealed)]; and

3. Plaintiffs' Motion for Leave to File Matters Under Seal [ECF 185].

Defendant's responses are due on October 14, 2016.

1

Additionally, the parties anticipate filing evidentiary motions in accordance with the Court's Standing Order. [ECF 11 at 4.]

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B.) Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

The claims remaining for trial involve only Queen Virgin Remy Columbus, LLC, and Mr. Dennis McKinley. The claims involving Queen Virgin Remy Ltd. Co. have been ruled upon by summary judgment. Queen Virgin Remy Ltd. Co. requests that the Court enter judgment on those claims at the conclusion of the entire case, following trial.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

Federal Question Jurisdiction: This Court has original jurisdiction as a federal question for under the Lanham Act, 15 U.S.C. §§ 1114, 1121, and 1125(a) and the Judicial Code of the United States, 28 U.S.C. §§ 1331, 1338(a), and 1338(b), which are Counts Two, Five, and Eight in the Amended Complaint. Entry of judgment in favor of Plaintiffs on those claims and entry of the permanent injunction is awaiting completion of the trial of the remaining state law claims in this case.

Supplemental Jurisdiction: The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the remaining claims bought under state laws.

Only Plaintiffs' claims for (a) conversion (Count One), (b) defamation (Count Nine), (c) for punitive damages (Count Twelve) and (d) for attorneys' fees (Count Thirteen) are to be tried. The remaining state law claims brought by Plaintiffs and Defendant were dismissed on summary judgment without relief.

5.

The following individually named attorneys are hereby designated as lead counsel for the parties:

Plaintiffs: Erika C. Birg, Nelson Mullins Riley & Scarborough LLP.

Defendant:   Kevin A. Ross, the Law Practice of Kevin A. Ross, LLC

Other Parties: (specify): None.

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

None.

7.

The captioned case shall be tried (X) to a jury or (  ) to the court without a jury, or (  ) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

The parties do not request bifurcation.

9.

Attached hereto as Attachment "**A**" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment **"B-1"** are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "**B-2**" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

No objections to voir dire questions.

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. *See* Fed.R.Civ.P. 47(b).

None

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

***Thomason v. McKinley, et al.* Civil Action 2015-CV-262305 (Fulton Cty. Super. Ct.) (Bonner, J.).**

Plaintiffs' statement:     In the case, Thomason asserts claims identical to or arising out of the same facts upon which she based the counterclaims in this action. Plaintiff submits that all claims are barred in the state court.

Defendant's statement:   In the case, Thomason asserts a number of claims which are not identical to her counterclaims in this case, which do not arise out of

the same transactions or occurrences as the claims asserted by Plaintiffs in this action, and which involve parties that are not before this Court.

14.

Attached hereto as Attachment "**C**" is Plaintiffs' outline of the case, which includes a succinct factual summary of Plaintiffs' causes of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment **"D"** is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied

7

upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment **"E"** are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

The legal issues to be tried are as follows:

**Plaintiffs' statement of the legal issues to be tried are:**

1. Whether Thomason converted property of Queen Virgin Remy Columbus, LLC when she took approximately $5900.00 worth of hair

extensions from the Queen Virgin Remy retail location in Columbus, and if so, what damages are owed?

2. Whether Thomason made written statements that constitute *defamation per se*, and if so, in what amount should damages be awarded?

3. Whether Plaintiffs are entitled to an award of punitive damages on the claims for conversion and defamation, and if so, in what amount?

4. Whether Plaintiffs are entitled to an award of attorneys' fees and costs under O.C.G.A. § 13-6-11, and if so, in what amount?

**Defendant's statement of the legal issues to be tried are:**

1. Whether Defendant's possession of the hair products which are the subject of the conversion claim was authorized?

2. Whether Defendant made one of the defamatory statements attributed to her?

3. Whether Defendant can establish the defense of truthfulness to the defamation claim?

4. Whether Defendant can establish the defense of qualified privilege to the defamation claim?

5. Whether Defendant can establish an absence of malice, which if accompanied by a finding of qualified privilege, would bar any recovery to Plaintiff McKinley?

6. Whether Plaintiff McKinley incurred any damage from the alleged defamation?

7. Whether Plaintiff's can establish the legal standard for the imposition of punitive damages?

8. Whether there has been a bona fide controversy among the parties, so as to preclude an award of attorneys' fees on the grounds of stubborn litigiousness or unnecessary trouble and expense?

9. Whether Plaintiffs' can establish that there was bad faith on the part of Defendant such as would authorize an award of attorneys fees?

18.

Attached hereto as Attachment "**F-1**" for the plaintiff, Attachment "**F-2**" for the defendant, is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party

shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "**G-1**" for the plaintiff, "**G-2**" for the defendant, are the typed lists of all documentary and physical evidence that will be tendered at ̄trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping

11

purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all

the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

None.

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "**H-1**" for the plaintiff, "**H-2**" for the defendant are any trial briefs which counsel may wish to file containing citations to

legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of ̄trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 A.M. on the date on which the case is calendared (or specially set) for ̄trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal July Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment **"I"** to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court. Plaintiffs' proposed verdict form is shown as Attachment "I-1" and Defendant's proposed verdict form is shown as Attachment "I-2."

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person in mediation with John A. Sherrill on

March 29, 2016, to discuss in good faith the possibility of settlement of this case. The court (  ) has or (___x___) has not discussed settlement of this case with counsel. It appears at this time that there is:

(____) A good possibility of settlement.

(____) Some possibility of settlement.

(__X__) Little possibility of settlement.

(____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

28.

The plaintiffs estimate that they will require one (1) day to present their evidence. The defendant estimates that it will require one (1) day to present its evidence.

It is estimated that the total trial time is two (2) days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case ( ) submitted by stipulation of the parties or ( ) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 2016.


_____
STEVE C. JONES, UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

*/s/ Erika C. Birg* _____          */s/ Kevin A. Ross* _____
Counsel for Plaintiffs                                   Counsel for Defendant

## ATTACHMENT A

### Proposed Joint Voir Dire Questions

1. Are you a citizen of the United States?

2. Are you a registered voter in the State of Georgia?

3. Are you proficient in the English language and able to read and write?

4. Do you currently have any felony criminal charges pending against you either in state or Federal Court?

5. Have you ever been convicted of a crime in either state or federal Court that is punishable by imprisonment for more than one year?

6. Please raise your hand if you know or have heard of any of the following people, brand(s) or companies:

   Queen Virgin Remy
   TW Hair, LLC
   McK3, LLC
   Royal Virgin Remy
   HairbyAoki
   Aoki Nikol
   Shanise Thomason
   Dennis McKinley
   Toya Wright
   Beautiful Bosses, LLC
   Erika Birg
   Peter Munk
   Nelson, Mullins, Riley & Scarborough
   Brian Burkhalter

> Melissa Ewing
> Mikesh Patel
> Patel, Burkhalter
> Kevin Ross
> Keith Pittman
> David W. Davenport
> Lamar, Archer & Cofrin

7. For any of those who responded, please tell me how you know of this company/person and what your relationship, if any, to the person/company may be.

8. Have you or any family member been involved in either the hair products or hair styling/services business?

9. Have you or any family member or close personal friend ever filed a claim or lawsuit of any kind?

   If so, did it make you more or less likely to rule in favor of a plaintiff?

10. Has anyone ever filed a claim or lawsuit against you or a member of your family or a close friend?

    If so, did it make you more or less likely to rule in favor or a defendant?

11. Has anyone had any previous experience as a witness in court?

12. Have you or a family member ever run or manage a business? If so, what was the nature of the business?

13. Have you ever been called for a jury duty before? If so, did you serve on a case?

    If so, did you gain anything from that case you would use to make judgments in this case?

    If so, were you the foreperson?

14. If the law and evidence warranted, would you be able to render a verdict in favor of the plaintiff or defendant regardless of any sympathy you may have for either party?

15. Based on what I have told you, is there anything about this case, or the nature of the claim itself, that would interfere with your ability to be fair and impartial and to apply the law as instructed by the court?

16. Can you accept the law as explained by the court and apply it to the facts regardless of your personal beliefs about what the law is or should be?

17. Do you know anyone else in the jury box other than as a result of reporting here today?

18. Would your verdict in this case be influenced in any way by any factors other than the evidence in the courtroom such as friendships or family relationships or the type of work you do?

19. Have you ever seen or heard anything about this case from any source whatsoever?

20. Is there anything, whether or not covered in the previous questions, which would affect your ability to be fair and impartial juror or in any way be a problem for you in serving on this jury?

21. Do any of you know of any reason why in such a case you cannot fairly consider the facts and the law as charged to you by the court?

22. As a prospective juror it will be your duty to determine the credibility or believability of a witness or of a piece of evidence.  Is there anybody who does not want to be responsible for making such a decision?

23. In this case you will hear conflicting statements.  Will any of you have so much trouble determining which person is telling the truth that you would rather not serve?

24. How do you feel about a person coming to court and asking monetary compensation for injury and damage done to him or her?

25. Do you believe in making full, fair, and just compensation to a person who has been injured and damaged through the fault of another person?

26. Do all of you understand that this is a civil case and not a criminal case? By that, the verdict that the jury will return will not determine whether

someone is guilty or not guilty of a crime, but rather will determine whether one party is liable for the conduct alleged by the other party?  Do any of you have any problem understanding that?

27. You have heard some of the questions I have asked some of the other people here.  As these questions were being asked, did anything pop into your mind that caused you to feel that you should tell me about it?

28. Searching your life's experience, is there anything else that you feel might have some bearing on your ability to be completely fair to both sides?

29. Would there be any hardship caused by a couple of days of jury service?  Is there anything in your personal life to stop you from being able to give us your conscious best throughout the entirety of the case?

30. Are any of the panel members related by blood or marriage, personally acquainted with, or represented by the attorneys representing the Plaintiff: Kevin A. Ross and David W. Davenport (please voir dire as to any other lawyers for Defendant who may appear at trial)?

31. Does any member of the jury panel know any of the members or employees of the law firm of Lamar Archer & Cofrin?

32. Are any of the panel members related by blood or marriage, personally acquainted with, or represented by the attorneys representing the

A-5

Defendants:  Erika Birg and Peter L. Munk? (please voir dire as to any other lawyers for Plaintiffs who may appear at trial)

33. Does any member of the jury panel know any of the members or employees of the law firm of Nelson Mullins Riley & Scarborough, LLP?

34. Has any prospective juror ever been represented by a lawyer at:

      (a)    The Law Practice of Kevin Ross?

            Lamar Archer & Cofrin

      (b)    Nelson Mullins Riley & Scarborough, LLP?

35. Have any of you ever worked for or done business of any kind with:

      (c)    Lamar Archer & Cofrin?

      (d)    Nelson Mullins Riley & Scarborough, LLP?

36. Are any of the members of this jury panel related, by blood or marriage, to anyone of the following witnesses:

**Please see Attachments F-1 and F-2 from the Pretrial Order which are attached hereto and made a part hereof.**

37. How many of you have any knowledge or training in the field of law?

38. How many of you have ever taken any classes in law?

39. Have you ever worked in a lawyer's office or for anybody who had anything to do with the legal system of the court?

40. Has any member of the jury panel or an immediate family member been employed by a lawyer or a law firm (as a lawyer or otherwise) in the last five (5) years?

41. During the course of the testimony of witnesses brought by the parties, the lawyers will have an opportunity to question the witnesses.  Sometimes, it is necessary to be fairly forceful.  The attorneys will try at all times to be courteous to these witnesses, but may have to be forceful.  Would the fact that an attorney questions a witness in a forceful manner cause you any concern in this case?

42. Do each of you understand that an attorney has a duty to object to evidence he feels should not be legally before the jury?

43. Is there any other experience or attitude we have not asked about that you think we might want to know about.  Is there anyone wondering, "Why didn't they ask me this?"

44. After listening to all of the evidence, and after listening to the law as instructed by the court, if it is your opinion that a verdict should be returned in favor of Ms.Thomason and against Mr. McKinley or Queen Virgin Remy, do any of you know of any reasons, whether motivated by

fear, prejudice, sympathy, or otherwise, why you would be reluctant to return a verdict in favor of Ms. Thomason?"

45. After listening to all of the evidence, and after listening to the law as instructed by the court, if it is your opinion that a verdict should be returned in favor of Mr. McKinley or Queen Virgin Remy and against Ms. Thomason, do any of you know of any reasons, whether motivated by fear, prejudice, sympathy, or otherwise, why you would be reluctant to return a verdict in favor of Mr. McKinley or Queen Virgin Remy?

## ATTACHMENT B-1

### Plaintiffs' Proposed General Voir Dire Questions

1. Are you familiar with the use of hair extensions by people to change the appearance of their natural hair?

2. Are you a purchaser or user of hair extensions?

   a. If yes, have you ever purchased or used hair from Queen Virgin Remy at a retail location?

      i. If you purchased hair at a retail location, which one?

   b. If yes, have you ever purchased or used hair from Queen Virgin Remy at its internet site?

3. Have you ever served on a jury before? If so, were you ever the foreperson?

4. Remembering that there is no penalty or shame for having prejudice -- since we all have prejudices -- but remembering that it would be wrong not to reveal any such prejudice, have you or any of your family members the slightest prejudice against Queen Virgin Remy or Dennis McKinley?

5. Do you or any of you have any hesitancy accepting as a principal of law that corporations and individuals are to be treated equally, without prejudice to either?

6. Do any of you feel it would be inconvenient for you to sit on this case for any personal reason?

7. Are you capable of looking at the evidence dispassionately without personal feelings and arriving at an impartial jury verdict in this case?

8. Will you listen carefully to the law given to you by the judge at the conclusion of the case and apply it even if you feel the law should be different in any respect from what the judge tells you it is?

9. Will you follow the law given to you by the judge at the conclusion of this case in spite of any feelings of sympathy that you might feel for any party in these proceedings?

10. Do any of you believe that attorneys charge too much money for their services?

11. Would any of you have trouble awarding attorneys' fees to Queen Virgin Remy on claims that the Court found in favor of the company previously, without trial?

12. Would any of you have trouble awarding additional damages to McKinley and Queen Virgin Remy in the form of punitive damages if it is proven that Thomason acted in bad faith or maliciously?

## ATTACHMENT C

## Plaintiffs' Outline of the Case to be Tried[1]

### Count I: Conversion.

On February 19, 2015, Thomason took $5900.00 of human hair product from the Queen Virgin Remy Columbus store without permission, claiming she was a co-owner of Queen Virgin Remy. Thomason admits to the taking. At the time of the taking, the police were called, and Thomason later was arrested. Thomason has admitted that she claimed ownership over the property because she allegedly was an owner of the business, or in the alternative, because QVR owner, McKinley, knew she was taking the hair in connection with an alleged sponsorship by QVR of an event Thomason was doing in connection with a hair show referred to as "Bonner Brothers." Thomason did not return the property. Instead, she gave it away to customers at the Bonner Brothers hair show. Thomason's actions have been willful and deliberate, and done with a reckless disregard for the

_____

[1] Plaintiffs submit an outline only as to the claims to be tried. As to the remaining claims that were decided, the facts are set forth in Plaintiffs' Motion for Partial Summary Judgment. [ECF 122.]

consequences. Thomason intended to injure McKinley, to take product from Queen

Virgin Remy, and to hurt Queen Virgin Remy's business.

<u>Statutes and legal authority (see also below re damages)</u>:

O.C.G.A. § 44-2-150 et seq.

*Williams v. Natl. Auto Sales, Inc.*, 287 Ga. App. 283, 285, 651 S.E.2d 194,

196 (2007); *Corbin v. Regions Bank*, 258 Ga. App. 490, 495, 574 S.E.2d 616,

621(2002); *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 358, 551 S.E.2d 765, 769 (2001)

| Description of Category of Damages | Amount | Citations |
|---|---|---|
| Actual damages | $5,900.00 | O.C.G.A. § 44-12-152<br><br>*Landsman Packing Co. v. Cont'l Can Co.*, 864 F.2d 721, 733 (11th Cir. 1989) |
| Interest | 7% per annum to be calculated as to the date of judgment. Interest is accruing at the rate of $1.13 per day. If judgment were entered on November 1, 2016, the interest would be <u>$712.85</u>. | O.C.G.A. § 13-6-13<br>O.C.G.A. §7-4-2 |

| Description of Category of Damages | Amount | Citations |
|---|---|---|
| Punitive Damages | $5,900.00 | O.C.G.A. § 51-12-5.1 and U.S. Const. Am. 8 & 14 <br><br> *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) <br><br> *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. *424 (2001)* <br><br> *D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E. 2d 478, 482 (Ga. App. 2003) <br><br> *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 n.34 (11th Cir. 2004) |

**<u>Count IX: Defamation</u>**:

Thomason has made false statements about McKinley on social media (Instagram), accusing McKinley of being a liar and committing perjury, and that he stole funds from Queen Virgin Remy. The statements are false and intended to and did injure McKinley. The statements are injuries as a matter of law because they charge McKinley of crimes, constituting defamation per se. Thomason's actions have been willful and deliberate and done with a reckless disregard for the consequences.

<u>Statutes and legal authority (see also below re damages)</u>:

O.C.G.A. §§ 51-5-1, 51-5-4

*Ingram v. Kendrick*, 48 Ga. App. 278 (1934); *Riddle v. Golden Isles Broadcasting, LLC*, 292 Ga. App. 888, 892 (2008); *B&F Sys., Inc. v. LeBlanc*, Civ. Action No., 7:07-CV-192(HL) 2011 WL 4103576 (M.D. Ga. Sept. 14, 2011); *Bellemead v. Stoker*, 280 Ga. 635 (2006); *Davis v. Macon Tel. Pub. Co.*, 93 Ga. App. 633 (1956); *Eidson v. Berry*, 202 Ga. App. 587, 415 S.E.2d 16 (1992); *John D. Robinson Corp. v. Southern Marine & Indus. Supply Co.*, 196 Ga. App. 402, 395 S.E.2d 837 (1990); *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 667 S.E.2d 716 (2008); *Lucas v. Cranshaw*, 289 Ga. App. 510 (2008); *Zarach v. Atlanta Claims Ass'n*, 231 Ga. App. 685 (1998)

| Description of Category of Damages | Amount | Citations |
|---|---|---|
| Compensatory Damages | $100,000.00 | O.C.G.A. § 51-5-1<br>O.C.G.A. § 51-5-4<br>*Ingram v. Kendrick*, 48 Ga. App. 278 (1934)<br><br>*Riddle v. Golden Isles Broadcasting, LLC*, 292 Ga. App. 888, 892 (2008)<br>*B&F Sys., Inc. v. LeBlanc*, Civ. Action No., 7:07-CV-192(HL) 2011 WL 4103576 (M.D. Ga. Sept. 14, 2011)<br><br>*Bellemead v. Stoker*, 280 Ga. 635 (2006)<br><br>*Davis v. Macon Tel. Pub. Co.*, 93 Ga. App. 633 (1956)<br><br>*Eidson v. Berry*, 202 Ga. App. 587, 415 S.E.2d 16 (1992)<br><br>*John D. Robinson Corp. v. Southern Marine & Indus. Supply Co.*, 196 Ga. App. 402, 395 S.E.2d 837 (1990)<br><br>*Lewis v. Meredith Corp.*, 293 Ga. App. 747, 667 S.E.2d 716 (2008)<br><br>*Lucas v. Cranshaw*, 289 Ga. App. 510 (2008) |

| Description of Category of Damages | Amount | Citations |
|---|---|---|
| | | *Zarach v. Atlanta Claims Ass'n*, 231 Ga. App. 685 (1998) |
| Punitive Damages | $100,000.00 | O.C.G.A. § 51-12-5.1 and U.S. Const. Am. 8 & 14<br><br>*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996)<br><br>*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. *424 (2001)*<br><br>*D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E. 2d 478, 482 (Ga. App. 2003)<br><br>*Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 n.34 (11th Cir. 2004) |

**Count XIII: Attorneys' fees under O.C.G.A. § 13-6-11**.

Thomason's actions, including as it relates to the trademark claims on which the Court ruled in favor of McKinley and her claims on which the Court also ruled in favor of McKinley, reflect bad faith and her intent to put McKinley to undue cost and expense in requiring the litigation. Her actions give rise to a finding of stubborn litigiousness under Georgia law.

Statutes and legal authority (see also below re damages):

O.C.G.A. §13-6-11; *Chong v. Reebaa Const. Co.*, 292 Ga. App. 750 (2008); *D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E. 2d 478, 482 (Ga. App. 2003)*; Fertility Techn. Resources, Inc. v. Lifetek Medical, Inc.*, 282 Ga. App. 148 (2006); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 n.34 (11th Cir. 2004).

| Description of Category of Damages | Amount | Citations |
|---|---|---|
| Attorneys' Fees on all claims in the case (whether decided by summary judgment or by trial) | $ 457,297.30<br><br>(to be updated prior to trial) | O.C.G.A. § 13-6-11<br><br>*Chong v. Reebaa Const. Co.*, 292 Ga. App. 750 (2008)<br><br>*D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E. 2d 478, 482 (Ga. App. 2003) |

| Description of Category of Damages | Amount | Citations |
|---|---|---|
| | | *Fertility Techn. Resources, Inc. v. Lifetek Medical, Inc.*, 282 Ga. App. 148 (2006) <br><br> *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 n.34 (11th Cir. 2004) |
| Expenses | $ 52,014.10 <br><br> (to be updated prior to trial) | O.C.G.A. §13-6-11 <br><br> *Chong v. Reebaa Const. Co.*, 292 Ga. App. 750 (2008) <br><br> *D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E. 2d 478, 482 (Ga. App. 2003) <br><br> *Fertility Techn. Resources, Inc. v. Lifetek Medical, Inc.*, 282 Ga. App. 148 (2006) <br><br> *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 n.34 (11th Cir. 2004) |

ATTACHMENT D

DEFENDANT SHANISE THOMASON'S OUTLINE OF THE CASE

Thomason has been in the hair styling business for twenty years.  Her first relationship with Plaintiff McKinley began when he became a supplier of hair products to her business. Their initial business relationship was positive.

Thomason believes that the parties entered into a partnership in the summer of 2012 regarding the Queen Virgin Remy business.  Defendant McKinley denies that there was ever a partnership between the parties.  There have been multiple legal proceedings between the parties, and there has yet to be a final determination regarding whether a partnership existed between the parties.

At all times relevant to Plaintiff Queen Virgin Remy Columbus, LLC's conversion claim and Plaintiff Dennis McKinley's defamation claim, Thomason held the belief that she was and is a partner in the Queen Virgin Remy business.

As to the conversion claims, Thomason asserts that she was authorized to assume possession of the hair products in question for use in connection with a Queen Virgin Remy sponsorship of a major hair industry trade show.

As to the defamation claims, Thomason has multiple assertions.  First, she denies making to Toya Wright the defamatory statement which Plaintiff McKinley attributes to Thomason. Second, she asserts as truthful numerous statements alleged by Plaintiff McKinley to be

defamatory.   Third, Thomason asserts a qualified privilege under Georgia law as to statement made by her in good faith with respect to a matter of her personal interest.   Fourth, Thomason asserts that the existence of her qualified privilege and the absence of malice on her part bars any recovery for Defendant McKinley.   Fifth, Thomason asserts that Defendant McKinley has not established any damage with respect to the alleged defamatory statements.

Thomason asserts that her defenses to the conversion and the defamation claims negate any legal basis for the imposition of punitive damages or a bad faith attorney's fees award. Further, Thomason asserts that the existence of bona fide controversies as to these matters preclude an award of attorney's fees based upon either the ground of stubborn litigiousness or unnecessary trouble and expense.

Legal Authorities Pertinent to Thomason's Defenses to Conversion Claim

*Lamb v. State Farm Mutual Auto Ins. Cos*, 240 Ga. App. 363 (1999)

*Kornegay v. Thompson*, 157 Ga. App. 588 (1981)

Legal Authorities Pertinent to Thomason's Defenses to Defamation Claim

*O.C.G.A § 51-5-5*

*O.C.G.A § 51-5-6*

*O.C.G.A § 51-5-7(3)*

Legal Authorities Pertinent to Thomason's Defenses to Punitive Damages Claim

*O.C.G.A § 51-12-5.1*

Legal Authorities Pertinent to Thomason's Defenses to Punitive Damages Claim

*O.C.G.A § 13-6-11*

| | |
|---|---|
| QUEEN VIRGIN REMY LTD. CO.,<br>QUEEN VIRGIN REMY COLUMBUS,<br>LLC,<br><br>     Plaintiffs,<br><br>and<br><br>DENNIS MCKINLEY, Individually,<br><br>     Plaintiff and Counter-Defendant,<br><br>v.<br><br>SHANISE W. THOMASON,<br><br>     Defendant and Counter-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br>)    FILE NO.: 1:15-cv-1638-SCJ |

## STIPULATION OF FACTS

1.    Queen Virgin Remy ("QVR") offers premium hair products to individual buyers, salon chains, cosmetic/beauty distributors, and retailers.

2.    McKinley started the Queen Virgin Remy business.

3.    McKinley and Thomason at one time were romantically involved, but broke up in 2014. This litigation ensued after the parties broke up.

4.    QVR operates a retail location for hair extension sales in Columbus, Georgia, as well as locations throughout the United States.

5.    Thomason has never been an employee of the Queen Virgin Remy business.

6.      On February 19, 2015, Thomason took hair weaves from the QVR

Columbus store.

7.      Thomason gave the hair away to customers at two events, specifically

Bronner Brothers.

8.      Thomason did not return the hair to QVR.

9.      Thomason has used Instagram under several names, including HairbyAoki.

10.     Thomason also uses the name Aoki Nikol.

11.     Thomason's Instagram account had approximately 13,000 followers.

12.     In June 2015, Thomason posted a copy of a complaint she had filed against

McKinley in state court.

13.     In the Instagram post, Thomason wrote that McKinley :

    a.  "I also found out he was transferring money out of accounts, using our

        PayPal & business accounts for his personal use . . ."

    b.  "Testified Under Oath that I Never worked for the Company & was

        never an Owner when my Money is what started this company. What

        Type of Person Does this!!!"

    c.  "just the thought of a Person u Trusted with your Hard Earned Money

        to Go to these Lengths to Steal from U when there is Enough for us &

        our Families to live Comfortable on!!!!"

## EXHIBIT F-1

## Plaintiffs' Witness List

| | Witness Name | Address | Availability at Trial |
|---|---|---|---|
| 1. | Dennis McKinley | 572 Edgewood Ave. Suite 116 Atlanta, GA 30312 | Will call |
| 2. | Shanise Thomason | 400 West Peachtree St. Unit 1308 Atlanta, GA | Will call |
| 3. | Erika Birg | 201 17th Street NW Suite 1700 Atlanta, GA 30329 | Will Call (attorneys' fees) |
| 4. | Amber King | 5863 Sunflower Ct. Ellenwood, GA 30294 | May call |
| | | 6059 Camden Forrest Dr. Riverdale, GA 30296 | |
| 5. | Jamecia Simmons | 585 McDaniel St. SW Unit 4101 Atlanta, GA 30312-2424 | May call |

*Plaintiffs' may call the individuals named on Defendant's witness list and to call, as may be needed, witnesses who were named in Defendant's amended initial disclosure responses dated May 24, 2016.

## **ATTACHMENT F-2**

DEFENDANT SHANISE THOMASON'S WITNESS LIST

Defendant Shanise Thomason will be present at trial.


Defendant Shanise Thomason may have present at trial:

Jakeem Smith
945 Society Circle, SW
Atlanta, Georgia 30331

Jamecia Simmons
3390 Stanford Road
Apartment 2016
Atlanta, Georgia 30326

Terrence Davidson
530 Piedmont Avenue, NE
Atlanta, Georgia 30308

**ATTACHMENT G-1**

**PLAINTIFFS' LIST OF PHYSICAL AND DOCUMENTARY EVIDENCE**

| Exhibit No. | Description | Bates No. | Defendant's Objections (see separate sheet) |
|---|---|---|---|
| 1. | 2015-02-19 Columbus Police Department – Incident Report | QVR 0013-17 | |
| 2. | 2014-02-21 Dispossessory Action | QVR 6226-6227 | |
| 3. | 2014-03-18 Petition for Temporary Protective | | |
| 4. | Instagram Post | QVR 0085-0093 | |
| 5. | 2015-03-04 e-mail from Thomason to mediatakeout | (from cellphone search) | |
| 6. | 2015-03-04 e-mail from Thomason to theshaderoom | (from cellphone search) | |
| 7. | 2015-02-21 Promotional materials | QVR 30-50 | |
| 8. | 2015-03-02 Internet Blog | QVR 60-63 | |
| 9. | 2015-03-06 Instagram Posting (includes additional dates) | QVR 22-28 | |
| 10. | 2014-03-06 Fortune Magazine Photo | QVR 63-66 | |
| 11. | 2015-03-26 Fulton County Verified Complaint | | |
| 12. | 2015-04-01 Promotion of Beyond the Chair event | QVR 51-59 | |
| 13. | 2014-06-04 Text message from McKinley to Jamecia Simmons | QVR 4199 | |

| Exhibit No. | Description | Bates No. | Defendant's Objections (see separate sheet) |
|---|---|---|---|
| 14. | 2015-06-26 Ltr. from Patel Burkhalter to K. Pittman re cease and desist on trademark | | |
| 15. | 2013-12-04 Text message from McKinley to Jamecia Simmons | QVR 4095 | |
| 16. | Attorneys' Fees Bills (to be supplemented again before trial)( | QVR 6628-6678, 6752-6764, (and To be Produced) | |
| 17. | Instagram Posting by HairbyAoki | QVR 320-21 | |

* Plaintiffs reserve the right to use and/or rely upon any exhibits listed by Defendant in her list.

** Plaintiffs also expect that they may use demonstrative exhibits as well as exhibits for impeachment or rebuttal.

## <u>DEFENDANT'S OBJECTIONS TO PLAINTIFFS' LIST OF PHYSICAL AND DOCUMENTARY EVIDENCE</u>

**<u>Exhibit 1</u>**.    Defendant objects to Exhibit 2 based upon Federal Rule of Evidence 403 in that evidence of an arrest which has not resulted in a conviction is of little to no probative value as to the underlying charges and its relevancy is substantially outweighed by the danger that it will cause unfair prejudice and mislead the jury. Defendant further objects to Exhibit 2 based upon Federal Rule of Evidence 802 as hearsay.

**<u>Exhibit 2</u>**.    Defendant objects to Exhibit 2 based upon Federal Rule of Evidence 402 in that evidence of dispossessory action is not relevant to the issues to be tried in this case.  Defendant further objects to Exhibit 2 based upon Federal Rule of Evidence 403 in that the evidence of the filing of a dispossessory action is of little to no probative value as to the issues to be tried in this case and its relevancy is substantially outweighed by the danger that it will cause unfair prejudice and mislead the jury.

**<u>Exhibit 3</u>**.    Defendant objects to Exhibit 3 based upon Federal Rule of Evidence 402 in that evidence of the petition for a temporary protective order is not relevant to the issues to be tried in this case.  Defendant further objects to Exhibit 3 based upon Federal Rule of Evidence 403 in that the evidence of the petition of a temporary protective order is of little to no probative value as to the issues to be tried in this case and its relevancy is substantially outweighed by the danger that it will cause unfair prejudice and mislead the jury.

**<u>Exhibit 4</u>**.    Defendant does not object to Exhibit 4.

**<u>Exhibit 5</u>**.    Counsel reserves Defendant's right to object to Exhibit 5 upon any legitimate grounds, pending conferral with Defendant.  If counsel determines that Exhibit 5 is not objectionable, Defendant will withdraw this reservation.

**<u>Exhibit 6</u>**.    Counsel reserves Defendant's right to object to Exhibit 6 upon any legitimate grounds, pending conferral with Defendant.  If counsel determines that Exhibit 6 is not objectionable, Defendant will withdraw this reservation.

**<u>Exhibit 7</u>**.    Defendant does not object to Exhibit 7.

**<u>Exhibit 8</u>**.    Defendant does not object to Exhibit 8.

**<u>Exhibit 9</u>**.    Defendant objects to Exhibit 9 based upon Federal Rule of Evidence 402 in that this Exhibit is not relevant to the issues to be tried in this case.

**<u>Exhibit 10</u>**.    Defendant does not object to Exhibit 10.

**Exhibit 11**.   Defendant objects to Exhibit 11 based upon Federal Rule of Evidence 402 in that this Exhibit is not relevant to the issues to be tried in this case.  Defendant further objects to Exhibit 11 based upon Federal Rule of Evidence 403 in that the evidence of the verified complaint which was promptly dismissed before any proceedings took place thereunder is of little to no probative value as to the issues to be tried in this case and its relevancy is substantially outweighed by the danger that it will cause unfair prejudice and mislead the jury.

**Exhibit 12**.   Defendant does not object to Exhibit 12.

**Exhibit 13**.   Defendant objects to Exhibit 13 based upon Federal Rule of Evidence 402 in that this Exhibit is not relevant to the issues to be tried in this case.

**Exhibit 14**.   Defendant objects to Exhibit 14 based upon Federal Rule of Evidence 402 in that this Exhibit is not relevant to the issues to be tried in this case.

**Exhibit 15**.   Defendant objects to Exhibit 15 based upon Federal Rule of Evidence 402 in that this Exhibit is not relevant to the issues to be tried in this case.

**Exhibit 16**.   Defendant objects to Exhibit 16 based upon several grounds.  Defendant objects on the basis of Federal Rule of Evidence 403, in that to the extent the attorney fees billing invoices do not clearly delineate the time spent on the claims to be tried in this case, then such invoices are of limited probative value which is substantially outweighed by the risk of misleading and confusing the jury.

**Exhibit 17.**   Defendant does not object to Exhibit 17.

**ATTACHMENT G-2**

**DOCUMENTARY EVIDENCE TO BE TENDERED AT TRIAL
BY DEFENDANT SHANISE THOMASON**

| | | |
|---|---|---|
| 1. | Checks Written From The Weave Spot/Shanise Thomason Wells Fargo Bank Account (Nos. 2532, 2536, 2540, 2631, 2549, 2635, and 2636) Betweeen September 5, 2012 and December 5, 2012 | ST 13, 30, 52, 58, 89, 92 and 98 |
| 2. | Checks Written From Shanise Thomason Bank Account (Nos. 186, 189, 190, 192, 193, and 194) Between October 4, 2012 and December 3, 2012 | ST 41, 59, 61, 90, 91 and 97 |
| 3. | Cashiers Check Drawn on Chase Bank Remitted from McK3 Ventures to Edgewood-Randolph Properties | ST 86 |
| 4. | Lease Agreement (Unexecuted) dated November 2012 by and among Edgewood-Randolph Properties, QVR Ltd and Dennis McKinley and EgoXtensions LLC and Shanise Thomason | ST 62-72 |
| 5. | Lease Agreement (Executed) dated November 21, 2012 by and among Edgewood-Randolph Properties, QVR Ltd and Dennis McKinley | ST 73-85 |
| 6. | Forwarded E-mail Dated February 6, 2013 re: Bronner Bros. Mid-Winter 2013 | ST 131-32 |
| 7. | E-mail Dated April 11, 2013 re: Toya Wright Proposal | ST 156 |
| 8. | Queen Virgin Remy Partnership Proposal | ST 157 |
| 9. | Sales Partner Agreement (Unexecuted) dated April 23, 2013 Between Beautiful Bosses, LLC and Queen Virgin Remy | ST 164-70 |
| 10. | Confidential Memorandum re: Setup/Rollout of Toya Wright Collection | ST 175 |
| 11. | Forwarded Email Dated June 17, 2013 Re: Toya Wright Logo | ST 182 |
| 12. | Email Thread Dated July 3-4, 2013 Re: Toya Wright Matters | ST 199 |
| 13. | Email Thread Dated July 6, 2013 Re: Toya Wright Matters | ST 203-05 |
| 14. | E-mail Thread Dated July 7, 2013 re: Toya Wright Website | ST 206-07 |
| 15. | E-mail Thread Dated July 13, 2013 re: Toya Wright Matters and CPA Information | ST 208-09 |
| 16. | E-mail Thread Dated July 31, 2013 re: Toya Wright Matters | ST 216-18 |
| 17. | E-mail Thread Dated August 6-7, 2013 re: Toya Wright Matters | ST 229-31 |

| 18. | Personal Appearance Agreement (Unexecuted) Dated August 10, 2013 by and between Queen Virgin Remy and Touched by Tokyo, LLC | ST 247-48 |
|---|---|---|
| 19. | Tees and Quotes Invoice Dated August 16, 2013 | ST 252 |
| 20. | Email Dated August 23, 2013 re: Toya Wright Launch | ST 265 |
| 21. | Letter Dated January 10, 2014 from Roslyn Grant to S. Thomason | ST 295-302 |
| 22. | Letter Dated April 1, 2014 from Uwonda Carter to D. McKinley re: Toya Wright Matters | ST 322 |
| 23. | E-mail Thread Dated February 4 and 5, 2014 Re: Masters Edition Class | ST 347-48 |
| 24. | E-mail Thread Dated February 9, 2014 Re: Class | ST 350 |
| 25. | E-mail Thread Dated February 9, 2014 Re: Class | ST 351 |
| 26. | Text Messages Between Jamecia Simmons and D. McKinley Dated February 17, 2014 | ST 352 |
| 27. | Text Messages Between Toya Wright and S. Thomason Dated May 9, May 10 and May 12, 2013 re: Toya Wright contract | ST 357 |
| 28. | Text Messages Between Toya Wright and S. Thomason Dated Between May 14, 2013 and July 5, 2013 | ST 358-404 |
| 29. | Text Messages Between S. Thomason and D. McKinley Dated February 24, 2013, October 12, 2012 and February 26, 2013 | ST 554-55 |
| 30. | Photographs | ST 556-57 |
| 31. | Text Messages Between Toya Wright and S. Thomason Dated April 20, 2013 | ST 611 |
| 32. | Text Messages Between Toya Wright and S. Thomason Dated April 11, April 17, April 18 and April 19, 2013 | ST 644-45 |
| 33. | Text Messages Between Toya Wright and S. Thomason Dated June 5, 2013 | ST 650 |
| 34. | Text Messages Between Toya Wright and S. Thomason Dated May 8, 9, 10, 12 and 14 | ST 653-54 |
| 35. | Text messages Between D. McKinley and S. Thomason | QVR-6393 |
| 36. | Text messages Between D. McKinley and S. Thomason | QVR-6609 |
| 37. | Text messages Between D. McKinley and S. Thomason | QVR-6614 |
| 38. | Transaction Report – Queen Virgin Remy Ltd. Co. | QVR-4822 |
| 39. | Complaint – Thomason v. McKinley, et al filed in Fulton Superior Court, June 19, 2015, Civil Action File No. 2015CV262305 | |

**PLAINTIFFS' RESPONSE TO ATTACHMENT G-2**

**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S EXHIBITS**

| EXHIB1IT | DESCRIPTION | BATES NUMBER | PLAINTIFFS' OBJECTIONS |
|---|---|---|---|
| 1. | Checks Written From The Weave Spot/Shanise Thomason Wells Fargo Bank Account (Nos. 2532, 2536, 2540, 2631, 2549, 2635, and 2636) Betweeen September 5, 2012 and December 5, 2012 | ST 13, 30, 52, 58, 89, 92 and 98 | Relevance (Rule 402) |
| 2. | Checks Written From Shanise Thomason Bank Account (Nos. 186, 189, 190, 192, 193, and 194) Between October 4, 2012 and December 3, 2012 | ST 41, 59, 61, 90, 91 and 97 | Relevance (Rule 402) |
| 3. | Cashiers Check Drawn on Chase Bank Remitted from McK3 Ventures to Edgewood-Randolph Properties | ST 86 | Relevance (Rule 402) |
| 4. | Lease Agreement (Unexecuted) dated November 2012 by and among Edgewood-Randolph Properties, QVR Ltd and Dennis McKinley and EgoXtensions LLC and Shanise Thomason | ST 62-72 | Relevance (Rule 402) |
| 5. | Lease Agreement (Executed) dated November 21, 2012 by and among Edgewood-Randolph Properties, QVR Ltd and Dennis McKinley | ST 73-85 | Relevance (Rule 402) |

| EXHIB1IT | DESCRIPTION | BATES NUMBER | PLAINTIFFS' OBJECTIONS |
|---|---|---|---|
| 6. | Forwarded E-mail Dated February 6, 2013 re: Bronner Bros. Mid-Winter 2013 | ST 131-32 | Relevance (Rule 402) |
| 7. | E-mail Dated April 11, 2013 re: Toya Wright Proposal | ST 156 | Relevance (Rule 402) |
| 8. | Queen Virgin Remy Partnership Proposal | ST 157 | Relevance (Rule 402) |
| 9. | Sales Partner Agreement (Unexecuted) dated April 23, 2013 Between Beautiful Bosses, LLC and Queen Virgin Remy | ST 164-70 | Relevance (Rule 402) |
| 10. | Confidential Memorandum re: Setup/Rollout of Toya Wright Collection | ST 175 | Relevance (Rule 402); Confidential (if introduced, precautions to be taken) |
| 11. | Forwarded Email Dated June 17, 2013 Re: Toya Wright Logo | ST 182 | Relevance (Rule 402) |
| 12. | Email Thread Dated July 3-4, 2013 Re: Toya Wright Matters | ST 199 | Relevance (Rule 402) |
| 13. | Email Thread Dated July 6, 2013 Re: Toya Wright Matters | ST 203-05 | Relevance (Rule 402) |
| 14. | E-mail Thread Dated July 7, 2013 re: Toya Wright Website | ST 206-07 | Relevance (Rule 402) |
| 15. | E-mail Thread Dated July 13, 2013 re: Toya Wright Matters and CPA Information | ST 208-09 | Relevance (Rule 402) |
| 16. | E-mail Thread Dated July 31, 2013 re: Toya Wright Matters | ST 216-18 | Relevance (Rule 402) |
| 17. | E-mail Thread Dated August 6-7, 2013 re: Toya Wright Matters | ST 229-31 | Relevance (Rule 402) |

| EXHIB1IT | DESCRIPTION | BATES NUMBER | PLAINTIFFS' OBJECTIONS |
|---|---|---|---|
| 18. | Personal Appearance Agreement (Unexecuted) Dated August 10, 2013 by and between Queen Virgin Remy and Touched by Tokyo, LLC | ST 247-48 | Relevance (Rule 402) Confidential (if introduced, precautions to be taken) |
| 19. | Tees and Quotes Invoice Dated August 16, 2013 | ST 252 | Relevance (Rule 402) |
| 20. | Email Dated August 23, 2013 re: Toya Wright Launch | ST 265 | Relevance (Rule 402) |
| 21. | Letter Dated January 10, 2014 from Roslyn Grant to S. Thomason | ST 295-302 | Relevance (Rule 402); Prejudicial (Rule 403) Settlement communications (Rule 408) |
| 22. | Letter Dated April 1, 2014 from Uwonda Carter to D. McKinley re: Toya Wright Matters | ST 322 | Relevance (Rule 402) Prejudicial (Rule 403) Hearsay (Rules 801 & 802) |
| 23. | E-mail Thread Dated February 4 and 5, 2015 Re: Masters Edition Class | ST 347-48 | Relevance (Rule 402) |
| 24. | E-mail Thread Dated February 9, 2015 Re: Class | ST 350 | Relevance (Rule 402) |
| 25. | E-mail Thread Dated February 9, 2015 Re: Class | ST 351 | Relevance (Rule 402) |
| 26. | Text Messages Between Jamecia Simmons and D. McKinley Dated February 17, 2015 | ST 352 | Relevance (Rule 402) Hearsay (Rules 801 & 802) [as to Ms. Simmons's statements] |
| 27. | Text Messages Between Toya Wright and S. Thomason Dated May 9, May 10 and May 12, 2013 re: Toya Wright contract | ST 357 | Authenticity (Rule 901) Relevance (Rule 402) Hearsay (Rules 801 & 802) |
| 28. | Text Messages Between Toya Wright and S. Thomason Dated Between May 14, 2013 and July 5, 2013 | ST 358-404 | Authenticity (Rule 901) Relevance (Rule 402) Hearsay (Rules 801 & 802) |

| EXHIB1IT | DESCRIPTION | BATES NUMBER | PLAINTIFFS' OBJECTIONS |
|---|---|---|---|
| 29. | Text Messages Between S. Thomason and D. McKinley Dated February 24, 2013, October 12, 2012 and February 26, 2013 | ST 554-55 | Authenticity (Rule 901) Relevance (Rule 402) Prejudicial (Rule 403) |
| 30. | Photographs | ST 556-57 | Authenticity (Rule 901) Relevance (Rule 402) Hearsay (Rules 801 & 802) |
| 31. | Text Messages Between Toya Wright and S. Thomason Dated April 20, 2013 | ST 611 | Authenticity (Rule 901) Relevance (Rule 402) Hearsay (Rules 801 & 802) |
| 32. | Text Messages Between Toya Wright and S. Thomason Dated April 11, April 17, April 18 and April 19, 2013 | ST 644-45 | Authenticity (Rule 901) Relevance (Rule 402) Hearsay (Rules 801 & 802) |
| 33. | Text Messages Between Toya Wright and S. Thomason Dated June 5, 2013 | ST 650 | Authenticity (Rule 901) Relevance (Rule 402) Hearsay (Rules 801 & 802) |
| 34. | Text Messages Between Toya Wright and S. Thomason Dated May 8, 9, 10, 12 and 14 | ST 653-54 | Authenticity (Rule 901) Relevance (Rule 402) Hearsay (Rules 801 & 802) |

| EXHIB1IT | DESCRIPTION | BATES NUMBER | PLAINTIFFS' OBJECTIONS |
|---|---|---|---|
| 35. | Text messages Between D. McKinley and S. Thomason | QVR-6393 | Relevance (Rule 402) Prejudicial (Rule 403)<br><br>This is an entire spreadsheet of text messages. Thus, the objection may be just to a portion of the text messages, but because Thomason does not identify which text messages she intends to introduce, Plaintiffs object to the overinclusive nature of the text messages as they will contain irrelevant and potentially prejudicial material |
| 36. | Text messages Between D. McKinley and S. Thomason | QVR-6609 | Relevance (Rule 402) Prejudicial (Rule 403)<br><br>This is an spreadsheet of text messages. Thus, the objection may be just to a portion of the text messages, but because Thomason does not identify which text messages she intends to introduce, Plaintiffs object to the overinclusive nature of the text messages as they will contain irrelevant and potentially prejudicial material. |

| EXHIB1IT | DESCRIPTION | BATES NUMBER | PLAINTIFFS' OBJECTIONS |
|---|---|---|---|
| 37. | Text messages Between D. McKinley and S. Thomason | QVR-6614 | Relevance (Rule 402) Prejudicial (Rule 403)<br><br>This is an spreadsheet of text messages. Thus, the objection may be just to a portion of the text messages, but because Thomason does not identify which text messages she intends to introduce, Plaintiffs object to the overinclusive nature of the text messages as they will contain irrelevant and potentially prejudicial material. |
| 38. | Transaction Report – Queen Virgin Remy Ltd. Co. | QVR4822 | Relevance (Rule 402) Hearsay (Rules 801 & 802) |
| 39. | Complaint – Thomason v. McKinley, et al filed in Fulton Superior Court, June 19, 2015, Civil Action File No. 2015CV262305 | | Relevance (Rule 402) Prejudicial (Rule 403) |

## ATTACHMENT I-1

### Plaintiffs' Proposed Verdict Form

### Queen Virgin Remy Columbus, LLC's Conversion Claim

1. Do you find by a preponderance of the evidence that Thomason converted the property of Queen Virgin Remy? (Circle one)

   Yes          No

   If your answer is "No," then skip to Question 4.

   If your answer is "Yes," then answer the next question.

2. What amount of compensatory damages do you award Queen Virgin Remy on account of this claim?

   $_____

3. What amount of punitive damages do you award Queen Virgin Remy on account of this claim?

### Dennis McKinley's Defamation Claim

4. Do you find by a preponderance of the evidence that Thomason committed defamation per se? (Circle one)

   Yes          No

   If your answer is "No," then skip to Question 7.

   If your answer is "Yes," then answer the next question.

5.  What amount of compensatory damages do you award McKinley on

    account of this claim?

    $_____

6.  What amount of punitive damages do you award McKinley on account of

    this claim?

    $_____

**Claim for Attorneys' Fees**

7.  Do you find by a preponderance of the evidence that Thomason has acted

    in bad faith has been stubbornly litigious, or has caused Plaintiffs

    unnecessary trouble or exposure? (Circle one)

         Yes          No

    If your answer is "No," then stop and sign below.

    If your answer is "Yes," then answer the next question before signing the

    form.

8.  What amount of attorneys' fees do you award Plaintiffs against Thomason

    on account of Thomason's bad faith, stubborn litigiousness, and/or causing

    Plaintiffs unnecessary trouble and expense?

    $_____

**JURY FOREPERSON SIGN HERE**  _____

**ATTACHMENT I-2**

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **QUEEN VIRGIN REMY LTD. CO.,**  ) | |
| **QUEEN VIRGIN REMY COLUMBUS,**  ) | |
| **LLC, and DENNIS MCKINLEY,**  ) | |
| **Individually,**  ) | |
| ) | |
| **Plaintiffs,**  ) | |
| ) | **CIVIL ACTION FILE NO.** |
| ) | **1:15-CV-1638-SCJ** |
| **v.**  ) | |
| ) | |
| **SHANISE W. THOMASON,**  ) | |
| ) | |
| **Defendant.**  ) | |

**We, the jury, in the above styled case find as follows:**

**Part One**

**Queen Virgin Remy Columbus, LLC's Conversion Claim**

_____         For the Plaintiff Queen Virgin Remy Columbus, LLC on its

conversion claim in the amount of $_____.

_____         For the Defendant Shanise Thomason.

If the verdict on the conversion claim is for Defendant Shanise Thomason,

then proceed to Part Two of this verdict form.

If the verdict on the conversion claim is for Plaintiff Queen Virgin Remy Columbus, LLC then answer the following two questions.

1.    Do you award Plaintiff Queen Virgin Remy Columbus, LLC punitive damages on its conversion claim and if so, in what amount?

$_____

2.    Do you award Plaintiff Queen Virgin Remy Columbus, LLC attorneys fees on its conversion claim and if so, in what amount?

$_____

## Part Two

## Dennis McKinley's Defamation Claim

_____    For the Plaintiff Dennis McKinley on his defamation claim in the amount of $_____.

_____    For the Defendant Shanise Thomason.

If the verdict on the defamation claim is for Plaintiff Dennis McKinley then answer the following two questions.

1.    Do you award Plaintiff Dennis McKinley punitive damages on his defamation claim and if so, in what amount?

$_____

2

2.      Do you award Plaintiff Dennis McKinley attorneys fees on his defamation claim and if so, in what amount?

$_____

By:    _____
           Jury Foreperson

           _____
           Print Name