IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| QUEEN VIRGIN REMY, LTD. CO.; QUEEN VIRGIN REMY COLUMBUS, LLC; DENNIS MCKINLEY;     Plaintiffs, <br><br> v. <br><br> SHANISE W. THOMASON, <br><br>    Defendant. | CIVIL ACTION NO. <br> 1:15-CV-1638-SCJ |

## ORDER

This matter appears before the Court on Plaintiffs' Motion for Sanctions (Doc. No. [183]) and other related motions (Docs. No. [185], [193], [195], [198]). For the reasons discussed below, the Court concludes that no hearing is necessary on this matter, and thus defense counsels' motion for a hearing (Doc. No. [193]) is **DENIED**.

## I.  BACKGROUND

Discovery in this case was a protracted affair. In resolving a discovery dispute between the parties, the Court ordered Defendant to produce all documents responsive to certain requests for production by February 19, 2016, and ordered that discovery would close on March 15, 2016. Doc. No. [86]. Defendant produced some documents by the February deadline and some documents thereafter, but during her

deposition, just days before the close of discovery, Defendant revealed that she had just discovered an additional set of responsive text messages "when she entered the letter Q into a phone." See Doc. No. [130], pp. 128–29.

What's more, Defendant failed to respond to Plaintiffs' Second Request for Production before the close of discovery, necessitating another discovery conference on this and a litany of other issues. See Doc. No. [118]. During the conference call, the Court ruled that Defendant had waived any objections to the Second Request for Production by not objecting before the close of discovery. Id. pp. 35–36. Particularly relevant to the present Motion for Sanctions, Plaintiffs requested all documents "reflecting, referring or relating to 'Royal Virgin Remy,'" and all documents "sent to or from royalvirginermy@gmail.com." Doc. No. [184-3], pp. 26–27, ¶¶59, 62. Nevertheless, Defendant's April 4, 2016 production did not include any documents relating to Royal Virgin Remy, leading to yet another discovery hearing. See Doc. No. [184-1], pp. 6–7. On April 18, before the hearing, Defendant produced approximately 200 pages of documents pertaining to Royal Virgin Remy. See id. p. 7.

At the hearing, the Court asked if "everything" relating to Royal Virgin Remy had been produced in the April 18 production. Doc. No. [146], p. 3. Defense counsel Kevin Ross responded that Defendant "complied completely with the Royal Virgin

2

Remy production." Id. p. 4. When the Court inquired if "there is no question in [Mr. Ross'] mind there is nothing else out there," he responded that he had spoken with his client and "produced the records that have been turned over related to Royal Virgin Remy." Id. pp. 6–7. Plaintiffs disputed that all of the information had been turned over and requested "to have a forensic examination of [Defendant's] cell phone and email records" to do a key-word search for "Royal Virgin Remy." See id. pp. 13–14.

Due to the Court's "concerns as to whether all relevant documents have been produced by Defendant," the Court ordered a forensic examination of all of Defendant's phones. Doc. No. [145], pp. 1–2. The parties were directed to "agree among themselves . . . as to a third-party vendor to conduct the forensic examination." Id. p. 2. Additionally, the Court reserved ruling on Plaintiffs' request for attorneys' fees for the discovery disputes. Id. p. 3. The issue now before the Court is whether the information revealed by the forensic search of Defendant's phones demonstrates sanctionable discovery violations.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(g)(1) requires that every response to a discovery request be signed by an attorney of record certifying that, "to the best of

the person's knowledge, information, and belief formed after a reasonable inquiry," the information is "complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A). "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Id. 26(g)(3).

Federal Rule of Civil Procedure 37 likewise imposes sanctions on parties and their attorneys for discovery violations. If a party is not providing complete discovery responses, the opposing side may, after a good-faith conferral, move for an order compelling the discovery. Id. 37(a)(1). If the party fails to comply with the Court's order, the Court may impose a variety of sanctions, but "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Id. 37(b)(2)(C). Thus, both Rules 26 and 37 provide that the Court "must" impose sanctions for discovery violations, unless the offending party's actions were substantially justified—the Rules require "no demonstration of bad faith." See Devaney v. Cont'l Am. Ins. Co., 989 F.2d 1154, 1162 (11th Cir. 1993) (dealing with Rule 37); see also

AO 72A
(Rev.8/82)

Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1545 (11th Cir. 1993) (dealing with Rule 26).

### III. ANALYSIS

Plaintiffs have produced more than 900 pages of documents revealed by the forensic search of Defendant's phones for *in camera* inspection. Defendant and her counsel respond that many of these documents "are the functional equivalent of spam," some were not yet in existence at the time of the April 2016 production, some were in fact produced, some were "likely inaccessible," and some are duplicates. Doc. No. [196], pp. 3–4; see also Doc. No. [199], p. 2. Some of these arguments are more availing than others, but regardless of the precise number of documents it is beyond dispute that Defendant failed to produce relevant discovery.

For example, among the documents are numerous emails from Plaintiff to what appear to be media and online news outlets accusing Plaintiff Dennis McKinley of "stealing" and "[c]ommitting [f]raud" in connection with business dealings with Plaintiff and Tonya Wright. *In Camera*, pp. 12, 14, 18–19.[1] Although these specific emails are not the basis of McKinley's defamation claim as alleged in the complaint, Plaintiffs note that they intend to use them at trial and could have amended the

---

[1] Citations to the documents provided for *in camera* review are styled as "*In Camera*" with citation to the Bates-stamp numbers in the bottom right corner of each page.

complaint to add them had they been provided in a timely fashion. Doc. No. [204], p. 7 n.2. Defendant does not attempt to dispute that these emails should have been produced, but rather asserts that she "believes that these emails were deleted from her phone" and that they, thus, "would have been inaccessible to her." Doc. No. [196], p. 7; see also Doc. No. [197-1] p. 8, ¶15.

These emails are illustrative of Defendant's discovery violations. Taking Defendant at her word that these highly relevant emails were innocently "deleted from her phone," this does not, *ipso facto*, mean they "would have been inaccessible to her." As Plaintiffs aptly put it, "apparently no one on [Defendant's] team ever considered that they might simply log on to the actual e-mail account on the Web to access the account." Doc. No. [204], p. 6. As with the text messages Defendant "discovered" the day before her deposition by simply "enter[ing] the letter Q into a phone," even a modicum of effort could have led Defendant to the emails at issue. See Doc. No. [130], pp. 128–29. Simply producing whatever was on the particular phone she had at the time, instead of doing a full search of the email accounts, demonstrates to the Court that the Defendant and her counsel did not make "a reasonable inquiry" before signing the discovery responses. See Fed. R. Civ.

P. 26(g)(1). Moreover, neither Defendant nor her attorneys provide any "substantial justification" for their failure to simply search the full email accounts. See id. 26(g)(3).

In addition to the emails "deleted" from Defendant's phone, there are the vast swaths of emails Defense counsel characterize as "the functional equivalent of spam." Doc. No. [196], p. 3. Unlike the deleted emails, some 20 to 30 of these "spam" emails were reviewed by Mr. Ross, who concluded that they "were not required to be produced" because they were irrelevant. Doc. No. [196], pp. 11–12. Plaintiffs disagree, characterizing many of those same emails as "inquiries from hair suppliers related to Royal Virgin Remy, and it appears generated as a result of [Defendant] reaching out to suppliers." Doc. No. [204], p. 3. But regardless of whether Mr. Ross believed the emails to be relevant, Plaintiffs' Second Request for Production asked for *all* documents "reflecting, referring or relating to 'Royal Virgin Remy,'" and *all* documents "sent to or from royalvirginermy@gmail.com." Doc. No. [184-3], pp. 26–27, ¶¶59, 62.

Defendant might have been able to object that these requests were overly broad or unduly burdensome, had she done so in a timely fashion. But because she failed to object before the close of discovery, the Court ruled that Defendant had waived any objections to the Second Request for Production. Doc. No. [118], pp. 35–36. Thus,

7

Mr. Ross was not called upon to determine if the documents were relevant to the claims or defenses at issue in this case. He only needed to decide if they were responsive to Plaintiffs' requests. Because the emails are "to or from royalvirginermy@gmail.com," they indisputably are. See Doc. No. [184-3], p. 26, ¶59; see also, e.g., *In Camera*, pp. 24–31.

Still, had Mr. Ross and Defendant thoroughly and completely examined her royalvirginermy@gmail.com account and decided not to produce only those emails that are clearly and unquestionably irrelevant junk mail, the Court might have been inclined to decide their actions were substantially justified. But several of these "spam" emails are direct responses to solicitations—or what one supplier calls a "detailed inquiry"—made by Defendant herself on behalf of Royal Virgin Remy. See, e.g., *In Camera*, pp. 26–27, 31. Defense counsel try to explain these emails away by saying that the inquiries did not "le[a]d to any sales activity," but that in and of itself does not make them irrelevant. See Doc. No. [196], p. 11. Plaintiffs assert that the suppliers "appear to be the same Chinese suppliers used by McKinley and [Plaintiff Queen Virgin Remy, Ltd. Co.]." Doc. No. [184-1], p. 11.[2] While it is not clear if

---

[2] As Plaintiffs' counsel explains, she cannot confirm that the suppliers are the same because Queen Virgin Remy has been restricted from reviewing this information. See Doc. No. [184-1], p. 11 n.8.

8

Mr. Ross or Defendant reviewed these specific documents, any objection that they were "irrelevant" should have been brought to the Court's attention because it appears to be simply wrong.

The peak of the violations is in the final 25 pages of the *in camera* production. The first 10 pages are a back-and-forth exchange between Defendant and a graphic designer who is being asked to copy a Queen Virgin Remy flyer. *In Camera*, pp. 915–24. Defendant and her counsel only respond that these documents "are duplicated in other places throughout the [*in camera* production]" but do not dispute that they are highly relevant to this case and should have been produced. See Doc. No. [196], p. 13; Doc. No. [199], p. 17. The last 15 pages of the *in camera* production are text messages pertaining to the Royal Virgin Remy business partnership. *In Camera*, pp. 925–40. Defense counsel's only explanation for failing to produce these texts is that they "range from October 2015 to December 2015." Doc. No. [196], p. 13. This is a red herring. Plaintiffs requested all documents "reflecting, referring or relating to 'Royal Virgin Remy,'" and did not provide a limited time-frame. Doc. No. [184-3], pp. 27, ¶62.

Defendant and her counsel focus on documents in the production that are irrelevant to the issues in this case as if this absolves them of responsibility for the

obviously relevant documents they did not produce. It does not. While some of the emails may have been inaccessible on Defendant's phones, there is no indication anyone ever simply logged into her email accounts via a web browser to conduct a thorough search. While some of the "spam" emails are irrelevant, some certainly are not, and in any event Mr. Ross was not asked to determine if the emails were relevant—he was asked to produce them. More troubling still are the numerous, highly relevant documents that were "inadvertent[ly]" not produced without any adequate explanation. See Doc. No. [199], p. 18. The Court concludes that Defendant's responses to Plaintiffs' requests for production do not comply with Rule 26(g)(1) because they were not made "after a reasonable inquiry," and were not "complete and correct as of the time [they were] made." See Fed. R. Civ. P. 26(g)(1)(A). The Court further concludes that neither Defendant nor her counsel have provided a "substantial justification," for many of the deficiencies in the responses. Id. 26(g)(3). Thus, the Court is required to "impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Id.

The question becomes, what is an appropriate sanction? Rule 26(g)(3) itself suggests an answer, stating that the sanction "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ.

P. 26(g)(3). This seems an appropriate sanction in this case. Because of Defendant and her counsel's repeated discovery failures in this case, the Court held three hearings and ultimately ordered that Defendant's phones be submitted for forensic examination. The forensic fees paid by Plaintiffs were $32,349.88. Doc. No. [184-6], pp. 52–62. Defendant and her counsel protest that these fees are unreasonable and assert that Plaintiffs' own attorney criticized the forensic firm as "horrible." Doc. No. [196], p. 16; Doc. No. [199], p. 20. While the forensic fees may seem excessive, Defendant cannot lay the blame entirely at the feet of Plaintiffs. The parties were ordered to "agree among themselves . . . as to a third-party vendor to conduct the forensic examination." Doc. No. [145], p. 2. If the examination had been fruitless, Plaintiffs would have had to pay all of the fees. But because the examination was necessary to reveal Defendant's discovery deficiencies outlined above, she and Mr. Ross[3] must pay the fees.

---

[3] As explained in the response brief of Defendant's attorneys, Mr. Ross was in charge of the discovery production leading to the present motion and the other attorneys simply relied on him. See Doc. No. [196], p. 11. Mr. Ross was the attorney who personally met with Defendant to review the Royal Virgin Remy production, decided not to produce certain emails, and made representations to the Court that Defendant "complied completely with the Royal Virgin Remy production." Id.; Doc. No. [146], p. 4. Thus, although both Mr. Ross and Keith Pittman signed the discovery responses, Mr. Ross is the only attorney the Court will hold liable for the violations. See Docs. No. [184-2]; [184-4].

Next, the Court turns to the issue of Plaintiffs' reasonable attorneys' fees caused by Defendant's violation. The Court agrees that the rates charged by Plaintiffs' counsel are reasonable. See Doc. No. [184-6], pp. 3–4, 10–12. However, some of the attorneys' fees included in the calculation are not recoverable because they were not "caused by the violation" of Rule 26. See Fed. R. Civ. P. 26(g)(3). For example, Plaintiffs asks for fees related to all three discovery conferences, even though the Court previously denied the fees leading up to the May 2016 hearing. See Doc. No. [184-1], p. 24; see also Doc. No. [184-6], pp. 15–16. The Court declines to reconsider its prior assessment, and concludes that the fees associated with the first two hearings ($3,623 in March and $311 in April) are not recoverable. See Doc. No. [184-6], p. 15.

However, the $12,855 incurred in May 2016 relating to the hearing that led to the forensic examination of the phones is recoverable. See id. p. 16. Defense counsel objects that Plaintiffs "seek to assess time for the discussions between the parties about the interpretation of the Court's order." Doc. No. [196], p. 16. This presumably refers to the approximately $3,000 Plaintiffs incurred because the Court had to explain that "[w]hen the Court stated 'all of Defendant's phones,' it did, indeed, mean ' all of Defendant's phones.'" See Doc. No. [173], p. 3. The dispute between the

parties over the meaning of the word "all" was part and parcel of the forensic examination necessitated by Defendant's discovery violations, and thus those fees are recoverable as well. Likewise, the $10,488 incurred due to the present Motion for Sanctions is directly related to this dispute and is recoverable. See Doc. No. [184-6], p. 17.

As to the $16,985 incurred in collecting and reviewing the data from the phones, the Court concludes that some of this cost was needlessly caused by Defendant's failure to turn over the information in the first place. See id. pp. 16–17. But the vast majority of this amount are costs that Plaintiffs would have incurred even if Defendant had promptly turned over the information, because Plaintiffs' counsel would still have had to review the emails, text messages, *etc*. Based on a review of the information provided (see id. pp. 40–51), the Court concludes that only one quarter of the total amount—i.e. $4,246.25—was "caused by the violation" of Rule 26. See Fed. R. Civ. P. 26(g)(3). As with the forensic fees, the Court concludes that Defendant and Mr. Ross are both responsible for the attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant's responses to Plaintiffs' requests for production violated Rule 26(g)(1). Plaintiffs' Motion for Sanctions (Doc. No. [183]) is **GRANTED** and Defendant and Mr. Ross are jointly and severally liable to Plaintiffs in the amounts of $32,349.88 in forensic fees and $27,607.25 in attorneys' fees, all reasonably incurred due to this discovery dispute. As mentioned above, defense counsels' motion for a hearing (Doc. No. [193]) is **DENIED**. The related motions for leave to file matters under seal (Docs. No. [185], [195], [198]) are **GRANTED**.

**IT IS SO ORDERED,** this  15th  day of September, 2017.

                                       s/Steve C. Jones
                                   HONORABLE STEVE C. JONES
                                   UNITED STATES DISTRICT JUDGE